# Exhibit A –

# Plaintiffs' Complaint

Electronically Filed
3/19/2021 6:19 PM
Steven D. Grierson
CLERK OF THE COURT

**COMP**
James J. Lee, Esq.
NV Bar No. 1909
LEGAL OFFICES OF JAMES J. LEE
2620 Regatta Drive #102
Las Vegas, NV 89128
*****
900 W. Broadway St. Suite 920
San Diego, CA 92110
Cell: 702-521-4377
Ofc: 702-664-6545
Fax: 702-946-1115
james@leelitigate.com

*Attorneys for Plaintiffs Elba Servin, Brian Gomez, and Nataly Pueblas*

CASE NO: A-21-831471-C
Department 31

**EIGHTH JUDICIAL DISTRICT COURT**

**CLARK COUNTY, NEVADA**

| | |
|---|---|
| ELBA SERVIN, BRIAN GOMEZ, and NATALY PUEBLAS, | |
| Plaintiffs, | CASE NO: |
| SILVINO HINOJOSA, TOPGOLF USA LAS VEGAS, LLC, TOPGOLF USA, INC., DOES I through X, inclusive, and ROES I through X, inclusive, | **COMPLAINT** **(DEMAND FOR JURY TRIAL)** |
| Defendants. | |

- 1 -

COMES NOW, Plaintiffs Elba Servin, Brian Gomez, and Nataly Pueblas, by and through their counsel, James J. Lee, Esq., of Legal Offices of James J. Lee and [insert co-counsel], and as and for their Complaint against Defendants alleges:

## **INTRODUCTION**

1.       TopGolf USA Inc. ("Topgolf USA" or "TopGolf Corporate") controls more than 50 golf entertainment venues in Europe and the United States, including its flagship facility in Las Vegas, TopGolf Las Vegas, LLC ("TopGolf LV"). TopGolf USA and TopGolf LV (sometimes referred to collectively as "TopGolf"), created, condoned, and covered up a misogynistic "frat boy" culture at its Las Vegas location, where severe and pervasive sexual harassment, abuse, and assault of low-level employees was accepted, normalized, laughed about, and seemingly even rewarded.

2.       This culture was intertwined with other illegal and characteristically abusive conduct, including the frequent use of cocaine in the workplace by Defendant Silvino Hinojosa ("Hinojosa") with other managers, Hinojosa's use of date rape drugs to manipulate, and disarm his victims, and TopGolf's knowing hiring and retention of undocumented persons, whose vulnerable status was exploited to at once victimize and silence them from standing up for their rights through threats of deportation.

3.       Indeed, one of the reasons Hinojosa was allowed to engage in the illegal conduct described herein without restriction or discipline and received assistance by Topgolf USA was because Hinojosa threatened to report TopGolf to immigration authorities for its hiring of undocumented employees, if TopGolf should ever terminate him for his conduct.

4.       In fact, after contemporaneous written statements were filed accusing Hinojosa of sexual harassment and assault that TopGolf could not cover up or destroy, forcing them to finally

terminate Hinojosa in May of 2018, he apparently *did* contact immigration authorities and report TopGolf's illegal hiring practices, which ultimately led to the termination of approximately 50 employees.

5. Hinojosa is a serial sexual predator who was at the center of TopGolf's dehumanizing, toxic work environment at Topgolf LV from its opening in April of 2016 to his termination in May of 2018, who leveraged his power over female and/or low-level employees that he supervised to systematically harass, abuse, and assault them.

6. While at TopGolf LV Hinojosa's predatory conduct was accepted, enabled, and covered up by TopGolf USA, which was responsible for the enforcement of TopGolf LV's anti-sexual harassment policies. In fact, TopGolf USA allowed for the hiring and retention of at least two other registered sex offenders at different venues, which is reflective of TopGolf's USA's utter indifference to sexual harassment and its legal duty to protect Topgolf employees.

7. As described in detail below, TopGolf USA and TopGolf LV engaged in a tacit, sometimes overt conspiracy to harbor and protect Hinojosa, which allowed him to continue victimizing the Plaintiffs herein and others. Hinojosa is now incarcerated in Clark County Detention Center awaiting trial on charges of Sexual Assault of a Minor under 14 years of age (C-19-343817-1) and Felony Sexual Assault of TopGolf employee Ciara Williams (C-20-352298-1), who has filed a previous action in Clark County District Court against Defendant Hinojosa and TopGolf Defendants, now in the United States District Court for the State of Nevada. (*Williams v. Hinojosa, et al.*, Case No.: 2:20-cv-01871-RFB-NJK).

8. As further described below, Plaintiffs Elba Servin, Brian Gomez, and Nataly Pueblas, (collectively "Plaintiffs") who, like Ciara Williams, were kitchen workers at TopGolf LV who were victims of Hinojosa's persistent sexual harassment, sexual assault, and abuse, and

the hostile work environment that TopGolf created and condoned, which enabled and protected him.

## **PARTIES AND JURISDICTION**

9.     Plaintiff, Elba Servin ("Servin") is a resident of Clark County, Nevada, and at all relevant times was an employee of Defendant TopGolf USA Las Vegas LLC ("TopGolf LV").

10.     Plaintiff, Nataly Pueblas ("Pueblas") is a resident of Clark County, Nevada and at all relevant times was an employee of TopGolf LV.

11.     Plaintiff, Brian Gomez ("Gomez") is a resident of Clark County, Nevada and at all relevant times was an employee of TopGolf LV.

12.     Defendant, Silvino Hinojosa ("Hinojosa") is a resident of Clark County, Nevada,

13.     Defendant TopGolf LV is a Delaware limited liability company, with its place of business in Clark County, Nevada at 4627 Koval Ln. Las Vegas, NV, 89109.

14.     Defendant TopGolf USA Inc. is a Texas corporation, with a principal place of business at 8750 North Central Expressway, Suite 1200, Dallas, Texas 75231. TopGolf USA Inc. is the parent company of TopGolf LV, and all other Topgolf venues in the United States.

15.     At all relevant times, TopGolf Corporate assumed the duty to and did govern, manage, authorize, approve, promulgate and enforce the stated anti-harassment and discrimination policies of Defendant TopGolf LV.

16.     TopGolf USA, through its human resources department, destroyed, concealed and/or engaged in spoliation of Plaintiff Servin's and her co-employee Ciara Williams' handwritten descriptions of the harassment and assault by Hinojosa that they endured—which it was required to obtain and retain.

- 4 -

17.     The identities of the Defendants, Does I through X, are unknown at this time and may be individuals, partnerships or corporations. Plaintiffs allege that each of the Defendants designated herein as a Doe Defendants are individuals whose true names and capacities are unknown to the Plaintiff and are, therefore, sued by their fictitious names.

18.     The names and capacities, whether individual, corporate, associates, co-partnership, or otherwise of Defendants named herein as Roe Corporations I through X, inclusive, are unknown to Plaintiffs who therefore sue said Defendants by such fictitious names.  Plaintiffs will ask leave to amend this Complaint to substitute the true names of said Defendants when their true identities become known.

19.     Plaintiffs are informed and believe and thereupon alleges that the Defendants so designated herein as Roe Corporations I through X, inclusive are responsible in some manner for their agency, master/servant or joint venture relationship with said Defendants, or otherwise contributed to, as a proximate cause, the events complained of herein.

20.     Plaintiffs allege that TopGolf and Hinojosa aided and abetted, encouraged, and rendered substantial assistance to each other in breaching their obligations to and harming Plaintiffs, as alleged herein. Defendants, and each of them, acted with an awareness of their primary wrongdoing, and realized that their conduct would substantially assist the accomplishment of the wrongful conduct described herein. Likewise, TopGolf Defendants ratified Hinojosa's conduct by failing to protect TopGolf LV employees and instead retaining him, destroying contemporaneous evidence of his conduct, allowing him to continue to have supervisory control of his victims, and promoting him to have even more power over them.

21.     On July 12, 2018, Ciara Williams filed a sexual harassment and assault Charge of Discrimination ("charge") with the federal agency responsible for enforcing federal laws that

- 5 -

make sexual harassment in the workplace illegal (the Equal Employment Opportunity Commission or "EEOC"). Williams' charge described Hinojosa's harassment, assault, and subsequent promotion, and the corruption at TopGolf implicit in its retaining and rewarding him. As a matter of law, pursuant to the "single filing rule" Williams' Charge satisfied the individual Plaintiffs' herein duty to exhaust their administrative remedies by refiling redundant charges. Specifically, Williams' Charge—which described similar conduct as that described herein, by the same individuals, during the same time period, in the same location, in the same work unit, and under the same management—was sufficient to notify TopGolf of its responsibility to take immediate remedial action to protect its employees. Upon receipt of Ms. Williams' Charge, TopGolf did nothing in response.

22.     Moreover, all applicable statutes of limitation are tolled based on the continuing violation doctrine, and the threats of violence and harm to the Plaintiffs herein and their families by Hinojosa should they take any legal action against him.

## FACTUAL BACKGROUND

### I.   Plaintiff Elba Servin

23.     Plaintiff Elba Servin ("Servin") was hired as a full-time prep cook when TopGolf LV opened in or about April of 2016. Hinojosa was her immediate supervisor and at first, he was cordial and polite.

24.     On multiple occasions, Hinojosa told Servin that he had recently purchased a home for himself, his girlfriend, and a baby they planned to have, and that he was very excited about that. He often invited her to come see the new home, saying he wanted to know what she thought of it. In or about June 2016, one day after work as Hinojosa and Servin were leaving, he again invited her to stop by the house. When she learned that the house was close to her boyfriend's,

and not wanting to be rude, she accepted Hinojosa's invitation. She planned to go to her boyfriend's house seeing the new home.

25.     When Servin arrived at the home, Hinojosa climbed in through a window and let her in the front door. The home was completely empty. After showing Servin around the empty house, he grabbed her, threw her to the ground and pinned her there. Servin's perception was that Hinojosa's face changed completely, as if he had transformed into a "monster," as he raped her. Servin, in shock and in tears, immediately left and went home. Like many female victims of rape, she was too ashamed to tell anyone or even accept what happened to her.

26.     When Servin returned to work under Hinojosa's supervision,  he subjected her to virtually daily sexual harassment, including, but not limited to, vulgar and offensive sexual comments, innuendos, jokes, questions and advances; non-consensual touching and groping; pressing his genitals against her hips and buttocks; grabbing of her breasts; grabbing his genitals while looking at her and laughing or rubbing them on Servin's hand; requesting she go to a hotel room with him for sex; and sending explicit text messages, including pictures of his penis.

27.     Hinojosa's sexual harassment of Servin was often done in view of other TopGolf LV kitchen workers and co-managers, some of whom remained quiet, and some of whom (who were male) laughed at his conduct, consistent with the "frat culture" of the work environment.

28.     On days Hinojosa was not sexually harassing or assaulting Servin, he would subject to severe verbal abuse and public humiliation, insulting her work performance, worth and intelligence.

29.     TopGolf's policy was that complaints of any kind, including of sexual harassment, should be made to an employee's immediate supervisor. If that supervisor was the subject of the complaint or failed to take appropriate action, they were to report to the next manager in line.

- 7 -

30.     Servin complained on multiple occasions to at least two managers in line above Hinojosa. Her complaints went unrecorded and uninvestigated, and Hinojosa was never disciplined.

31.     Hinojosa knew that Servin was lodging complaints against him and retaliated by increasing her workload and making the harassment and verbal abuse more cruel, public, and physical.

32.     On one occasion, after Servin complained to a manager above Hinojosa, he was not disciplined, but Servin was transferred to a less desirable position the following day. Hinojosa gloated, claiming that he had her demoted because she had reported him and because she was stupid and useless. He also claimed that he would never be disciplined by TopGolf, because "with one phone call" he could report TopGolf and have the majority of the kitchen staff fired. He said he knew too much about TopGolf and that TopGolf couldn't afford to have what he knew come out.

33.     Servin had nightmares about Hinojosa and struggled to sleep. She began to take sleeping pills and often drank to excess. She found the work environment virtually intolerable but needed to take care of her family.

34.     In late December of 2016, at an employee Holiday party, Servin saw Hinojosa grope and reach his hands up the dress of a fellow prep cook and subordinate to Hinojosa, Ciara Williams ("Williams"). He did so while TopGolf LV Management looked on, and while Williams, who was ordinarily quiet and reserved but had taken a mixed drink from one of Hinojosa's friends, appeared "lost," unaware of where she was, and unable to stand or hold her head up.

35.     The next day when Hinojosa arrived two hours late to work and still drunk for his following morning, rather than be disciplined, he was called into management's office, and given a Christmas gift. What happened to Ciara Williams at the party became a running joke among he and management.

36.     TopGolf LV managers who were friends with Hinojosa regularly used drugs such as cocaine in the workplace, openly gave drugs to their co-managers, and protected each other from any discipline for violation of TopGolf Defendants' policies.

37.     By May 2017, Servin could no longer withstand the near-daily harassment and abuse. She told Plaintiff Brian Gomez ("Gomez") she was giving up and planned to quit. He encouraged her to file a complaint.

38.     With Gomez's assistance she went to Human Resources Regional Manager Joyce Boissell ("Boissell"). Boissell had specifically instructed Gomez to take all employee complaints against Hinojosa directly to her.

39.     Gomez accompanied Servin to the Boissell's office where they met with Boissell. Gomez helped her compose and translate her complaint from Spanish to English. Gomez was stunned when he saw Boissell pretending to take notes while in actuality she was only scribbling on a piece of paper.

40.     Servin described Hinojosa's sexual harassment, assault, and abuse to Boissell verbally, and also left a written statement describing the same on her desk. Such a written statement was made in accordance with TopGolf's written policy regarding sexual harassment complaint procedures, which provides that a written complaint by the complaining employee should be provided, "including details of the incident or incidents, names of the individuals

- 9 -

involved and names of any witnesses." Boissell promised she would take care of the situation. Servin never heard from Boissell again, and Servin's written statement was destroyed.

41.     Hinojosa seemed to know that that Servin and Gomez had reported him, because his sexual harassment of Servin, and gloating about his immunity from discipline, intensified after the complaint. Also, Hinojosa and his chief accomplice, Executive Sous Chef Shaun Schuette, began to brutally harass, bully, and humiliate Gomez for being a "snitch."

42.     A month later, in June of 2017, Hinojosa raped Ciara Williams in the TopGolf LV walk-in freezer. On the day of the incident, Servin saw Williams crying uncontrollably in the women's locker room. She knew it was concerning Hinojosa, as Servin observed Hinojosa's ongoing sexual harassment of Williams. Servin understood that Williams was going to HR to report Hinojosa that day.

43.     Later, she heard about Hinojosa sexually assaulting Williams in the walk-in freezer. Servin thought this would finally lead to his termination.

44.     On the same day she was raped, Williams reported Hinojosa to Boissell in HR, similarly, accompanied by Brian Gomez. In her report, Williams' described being cornered and digitally penetrated by Hinojosa, both verbally to Boisell and TopGolf LV Executive Chef Chris Vaughn, and in a written statement. Nothing was done to protect Servin, Williams, or the other female kitchen workers at TopGolf LV from Hinojosa. Just like with Servin's complaint, Williams was told that everything would be taken care of, but never heard from HR again after the complaint. What is more, Williams' written statement was also destroyed.

45.     In or around the Fall of 2017, Hinojosa was promoted to Sous Chef.

46.     On multiple occasions, Hinojosa told Servin that he was a former gang member. To her, the kitchen environment, with its drug use, intimidation tactics, and coverups of criminal

- 10 -

conduct, operated as if run by the "mafia" because it was so corrupt. Servin was explicitly and implicitly told by Hinojosa that if she ever took serious action against Hinojosa beyond reporting to TopGolf, he would retaliate by harming her or her family.

## BRIAN GOMEZ

47.     In April 2016, Plaintiff, Brian Gomez, ("Gomez") commenced work as a full-time Prep Cook at TopGolf LV, working the morning shift. Soon after, he was promoted to the position of "Receiver."

48.     Commencing soon after he was hired, Hinojosa and his manager, friend, and accomplice, Shaun Schuette, subjected Gomez to daily harassment, including, but not limited to, vulgar and offensive comments about his body, public humiliation and ridicule, demeaning names, extreme hostility, emotional abuse, and sexual assault.

49.     Gomez, like Servin, complained to multiple managers above Hinojosa and Schuette, including Executive Chef Chris Vaughn, who did nothing and instead laughed about the conduct.

50.     Gomez also lodged multiple complaints with TopGolf Corporate Regional Manager Joyce Boisell. In accordance with TopGolf's policy of de facto protecting Hinojosa, nothing was done.

51.     Gomez sought to protect other female victims whom he witnessed being sexually harassed by Hinojosa and who confided in him.  Hinojosa and Schuette, knowing that Gomez was complaining about them and helping victims like Williams and Servin make formal complaints, increased their abuse and sexual harassment of Gomez.

52.     Hinojosa and Schuette's sexual harassment of Gomez, which intensified after he helped Servin and Williams lodge complaints, included calling him names that insinuated he had

a small penis, including "chile pequeño," "jalepeño pequeno," and "small wiener." On multiple occasions, they trapped him in an enclosed space in the walk-in freezer and held him down as they simulated forced sodomy and oral rape by shoving their genitals into his face and behind.

53.     Gomez reported these incidents to Vaughn, who laughed, and Boisell, who told him she would take care of the situation but did nothing, and never documented his multiple complaints.

54.     Hinojosa and Schuette also retaliated against Gomez by leveraging their supervisory power over Gomez. They insisted Gomez increase the speed with which he carried out deliveries.

55.     On multiple occasions, Schuette and Hinojosa told Gomez he was fired. Gomez appealed to upper management who overrode his termination.

56.     On multiple occasions, Gomez observed Boissell sharing frequent smoke breaks with Hinojosa and Schuette, who would stare at him and laugh.

57.     After Gomez accompanied Williams to report her rape to TopGolf Corporate HR Manager Boissell about Hinojosa raping her in the walk-in freezer, Vaughn promoted Hinojosa only a few months later—whether as a reward for his conduct or a payoff to keep quiet about the dirt he had on TopGolf is not clear, though to be sure, the multiple complaints of sexual harassment and assault in his employment file were ignored as part of the decision making process. A joke circulated among the kitchen workers that to be promoted at TopGolf, you had to rape someone. At that point, it was common knowledge that Hinojosa had assaulted Williams in the kitchen walk-in and that she reported it to TopGolf Corporate, which did nothing.

- 12 -

58.     Hinojosa and Schuette began to set Gomez up in attempt to construct a justification for his termination. They intentionally disarranged, littered, and left in disarray any areas for which he was responsible. Gomez began to document everything.

59.     Gomez recorded a conversation with a co-worker who told him Hinojosa was setting him up to be fired. Gomez showed this recording to Executive Chef Chris Vaughn and Director of Operations Mark Jarvis. In response, they did nothing and showed nothing but indifference

60.     On May 15, 2019, Gomez was fired for making a mistake on his timesheet, what amounted the amount to incorrectly reporting 35 minutes of work. Contrary to TopGolf's progressive discipline policies, Gomez was fired for a first warning of this kind. Topgolf USA already had already processed his termination paperwork when he went to appeal the decision to the Topgolf's venue head Mark Jarvis who told him the decision came from "Corporate."

61.     Gomez's termination was in retaliation for his vocal support and advocacy for Ciara Williams, because prior to his termination, after TopGolf learned of Ms. Williams' civil case, he received a call from TopGolf USA regional manager Angela Erstad ("Erstad"). In the call, he scolded Gomez, and asked him why he helped Ciara back in 2017. She demanded to know who told him to help Ciara, and who knew about him helping Ciara. She asked whether he was still in contact with Ciara and if he had spoken with her.

62.     After his termination, Brian first got a hold of Estella (Corporate HR). Brian began to tell Estella what happened, and she told him "Yeah, I know who you are." She said she wasn't his HR regional Representative so he would have to call Erstad.  Brian called Erstad to try to keep his job—believing that the decision had in fact come from "corporate." Erstad said she had no

- 13 -

control over who was fired, she could do nothing about it, and the final say came from TopGolf LV, specifically Mark Jarvis as Director of Operations.

**NATALY PUEBLAS**

63.     Unlike the other Plaintiffs herein, Nataly Pueblas, ("Pueblas") was hired at TopGolf LV approximately five months after TopGolf had opened during which Hinojosa earned his reputation. She was hired in or around January 2017 as a full-time Dishwasher on the afternoon shift.  She was soon after promoted to the position of Prep Cook.

64.     Pueblas underwent an orientation when hired at TopGolf LV. The training did not cover how to report or respond to sexual harassment.

65.     In the Fall of 2017, when Hinojosa was promoted, he became Pueblas' head supervisor in the TopGolf LV kitchen.

66.     Hinojosa targeted Pueblas. He made sexual innuendos and stared at her incessantly in a way that made her feel uncomfortable. Hinojosa subjected Pueblas to virtually daily sexual harassment, including, but not limited to, vulgar and offensive sexual comments and advances and non-consensual touching.

67.     Pueblas observed Hinojosa sexually harass other female kitchen workers. The conduct she observed included, *inter alia,* Hinojosa following them in the walk-in refrigerator or freezer where he would assault them, making extreme sexual comments to and about female kitchen workers, commenting on and objectifying their bodies, and encouraging male kitchen workers and co-managers to laugh at his lascivious jokes at their expense.

68.     Pueblas had heard that Hinojosa had sexually assaulted Williams in the walk-in freezer and that rather than be disciplined or terminated, he was promoted to Sous Chef by Executive Chef Chris Vaughn.

69.     Knowing that TopGolf management not only tolerated but seemingly rewarded Hinojosa's conduct by promoting him and giving him more power in his campaign of victimization, Pueblas felt that reporting the sexual harassment she observed and experienced would be futile. Pueblas also observed that Hinojosa and Vaughn, the effective CEO of the kitchen, were friends. The nearly all-male kitchen management displayed rampant favoritism at TopGolf LV, with a strong correlation between those who were favored and the possession and use of illegal drugs.

70.     In or around early April of 2018, around the same time that Ciara Williams finally resigned due to the hostile work environment, Hinojosa's sexual harassment of Pueblas escalated.

71.     Hinojosa isolated Pueblas and refused to allow her to go on break with the other workers, so that she would be alone with him in the kitchen. He would then force her to clean on her hands and knees while he stared at her behind. With his hands on his groin, he watched her, commenting on how good it looked to him. He would intermittently approach her from behind, deliberately brush his body against hers, and comment on what color underwear she was wearing that day.

72.     TopGolf LV managers often walked by and observed Hinojosa's treatment of Pueblas but did nothing to stop it. Everything that happened in the kitchen, save for the severe acts of assault Hinojosa reserved for the walk-in freezer and cooler, was visible to the fellow Sous Chefs who were responsible for his shifts.

73.     After a week of this, TopGolf LV female kitchen workers were concerned about Pueblas' safety. They contested Hinojosa's treatment of Pueblas and requested others be allowed to clean with Pueblas during break. Hinojosa refused.

- 15 -

74.     On April 18, 2018, he issued her a warning and sent her home. She had never before received a warning and did not understand why she was being punished. He told her to wait for someone to call and tell her if she still had a job.

75.     Against protocol, the corrective action form does not state any facts regarding the reason for the warning, aside from it being classified as a "schedule violation." The warning was signed and dated by Hinojosa on the date the warning was issued. It was not approved by next level management until two weeks later, when it was signed and dated by TopGolf LV Director of Operations, Mark Jarvis on May 2, 2018.

76.     Pueblas began wearing oversized clothing to protect and hide her body. She would hold her shirt with one hand as she cleaned on the floor. Hinojosa would comment, "why are you pulling your blouse down? I already saw your panties."

77.     In mid to late April, while Pueblas was cleaning, Hinojosa came up behind her, commented on her underwear color, and groped her buttocks. Pueblas told him she did not want him to touch her. When she returned from break, Hinojosa told Peublas, "you like it when I touch you like that."

78.     After her shift that night, Hinojosa followed Pueblas. In the hallway, he asked her to send photographs of herself in underwear and naked. Another co-employee observed this and told Pueblas to complain to the HR office. Pueblas asked for his help, but he said she should go alone, as he would be fired if he helped her report Hinojosa.

79.     One week later, Hinojosa again followed Pueblas after her shift. He told her he "was craving for her." She asked him to stop and stated she would go to HR if he did not. Hinojosa told her she could report him but that she should be careful because "accidents happen, especially

- 16 -

if she were to cross the street," implying he would have her run over by a car if she complained about him. Pueblas was petrified.

80.     In spite of this threat, on or around May 1, 2018, Pueblas finally complained to a TopGolf LV Office Administrator, Stacy Moss. This was the first time a formal complaint of sexual harassment against Hinojosa was made to someone other than a TopGolf Corporate manager. Pueblas was provided an MGM Grand Incident Report Form in which she gave a written statement of the above-described harassment. After Pueblas submitted the written report, at no point did TopGolf management follow up with her about the complaint or inform her of any action taken against Hinojosa.

81.     After years of protecting Hinojosa, permitting and enabling him to commit heinous crimes against his subordinates, TopGolf Defendants finally terminated him shortly after Nataly and another female employee, Jenny Vasquez, submitted formal complaints to MGM Topgolf's lessor. Notably, this was after TopGolf became aware that Williams had obtained legal counsel. TopGolf LV claims it terminated Hinojosa on May 2, 2018. The day he was fired, he left the LV premises, screaming and threatening to call ICE. One month later, by early June of 2018, TopGolf LV Management began to caution employees that immigration authorities were investigating all of TopGolf's U.S. locations. Subsequently, approximately 50-60 undocumented workers were fired from TopGolf's LV kitchen alone.

82.     On May 15, 2019, the same day that Gomez was terminated in retaliation for trying to help Servin and William, Topgolf USA also formally accused Pueblas of sexually inappropriate behavior and issued her a Corrective Action Form.

83.     Pueblas was called directly to HR where Topgolf USA Regional Manager Erstad accused her of liking women, stating that her tendencies made others feel uncomfortable. She was

told that an investigation had been conducted and there were rumors or gossip she had sexually harassed female workers at TopGolf LV. Pueblas didn't want to sign the corrective action form as she adamantly denies any truth to these accusations. However, she was told that if she did not affirmatively sign, she would be terminated. Pueblas explicitly denies these accusations in the comments section of the form, referring to the actions taken against her as unjust. She was told by her co-workers that TopGolf was retaliating against her for reporting Hinojosa.

84. On or about October 3, 2019, Hinojosa was arrested and charged with felony sexual assault of a child under 14. On October 17, 2019, Hinojosa was charged with sexual assault and false imprisonment for what he did to Ciara Williams. He remains incarcerated pending jury trial in both cases.

85. Similar to Servin, Pueblas feared for her life should she take any further action to report Hinojosa beyond TopGolf and decided to try and forget and repress the painful memories of her time there—though they continued to haunt her. In fact, when she was subpoenaed for deposition in Ms. Williams' civil case in September 2020, she did not initially show to testify out of fear of what Hinojosa would do to her. Within a week after she finally did testify, a friend of Hinojosa's came to her place of work to tell her that Hinojosa was out of jail and was having a BBQ to celebrate with some of the other TopGolf employees that were his accomplices. This was completely false, and Hinojosa remains incarcerated to this day.

## FIRST CAUSE OF ACTION

## SEXUAL HARASSMENT

86. Plaintiffs incorporate by reference each allegation contained in Paragraphs 1 through 85 as if fully set forth herein. At all relevant times Defendant Hinojosa was Plaintiffs' supervisor.

87.     As outlined throughout this complaint, Hinojosa repeatedly engaged in sexual harassment of Plaintiffs during the course of their employment with TopGolf LV. Defendant Hinojosa's sexual advances and assaults were unwelcome, pervasive, and severe, which created a hostile work environment.

88.     Plaintiffs were unable to terminate their relationship with Defendant TopGolf LV because their employment provided their livelihood, and their employment required them to work with Hinojosa. TopGolf Defendants did nothing to stop Hinojosa from harassing Plaintiffs while they worked with him.

89.     As a direct and proximate result of Defendants' actions Plaintiffs suffered and suffer severe emotional distress, humiliation, anxiety, depression, and fear, all to their damage in an amount to be proven at trial.

90.     Defendants' actions were malicious, and oppressive, and done in conscious disregard for Plaintiffs and Plaintiffs are thereby entitled to punitive damages from Defendants and each of them.

## SECOND CAUSE OF ACTION

### (RETALIATORY DISCHARGE)

91.     Plaintiff Gomez incorporates by reference each allegation contained in Paragraphs 1 through 90 as if fully set forth herein.

92.     Plaintiff Gomez opposed TopGolf Defendants unlawful discriminatory employment practices described herein by complaining about those practices to TopGolf Defendants' managers and by trying to protect and help other female employees who were victimized by said unlawful conduct.

- 19 -

93.     As a proximate result of this, Plaintiff Gomez was terminated for the pretextual reason that he had "stolen time from TopGolf LV." In fact, the real reason was contained in the telephone call he received from Erstad who scolded him for helping female employees who were victims of TopGolf Defendants' unlawful discriminatory employment practices.

94.     As a result of TopGolf Defendants unlawful conduct Plaintiff has suffered and continues to suffer actual, general, and compensatory damages.

95.     TopGolf Defendants retaliation was malicious, oppressive, and done in conscious disregard for Plaintiff Gomez and Plaintiff Gomez is thereby entitled to punitive damages from Defendants and each of them.

### THIRD CAUSE OF ACTION

### (INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS)

96.     Plaintiffs Servin and Pueblas incorporate by reference each allegation contained in Paragraphs 1 through 95 as if fully set forth herein.

97.     As described herein, the conduct of Defendants described above was extreme and outrageous and done intentionally to cause Plaintiffs Servin and Pueblas severe emotional distress, or with reckless disregard that said conduct was likely to harm Plaintiffs Servin and Pueblas and cause them extreme emotional distress.

98.     As a direct and proximate result of Defendants' actions Plaintiffs Servin and Pueblas have suffered and suffer severe emotional distress, humiliation, anxiety, depression, and fear, all to their damage in an amount to be proven at trial.

99.     Defendants' actions were malicious, oppressive, and done in conscious disregard for Plaintiffs Servin and Pueblas and they are thereby entitled to punitive damages from Defendants and each of them.

**FOURTH CAUSE OF ACTION**

**(NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS AGAINST TOPGOLF USA)**

100.    Plaintiffs Servin and Pueblas incorporate by reference each allegation contained in Paragraphs 1 through 99 as if fully set forth herein.

101.    Topgolf USA assumed a duty to enforce its own policies and knew or should have known that failure to exercise due care in its acts and omissions, above described, would cause Plaintiffs severe emotional distress.

102.    As a direct and proximate result of the acts Defendants' acts and omissions caused Plaintiffs to suffer severe emotional distress, humiliation, anxiety, depression, fear, and post-traumatic stress disorder all to her damage in an amount to be proven at trial.

103.    These Plaintiff's and each of them are therefore entitled to compensatory damages in an amount in excess of $15,000.

**FOURTH CAUSE OF ACTION**

**(NEGLIGENCE AGAINST TOPGOLF USA)**

104.    Plaintiffs Servin and Pueblas incorporate by reference each allegation contained in Paragraphs 1 through 103 as if fully set forth herein. At all relevant times Topgolf USA was aware that Hinojosa was a sexual predator who engaged in sexual harassment and assault against Plaintiffs and other employees at TopGolf LV.

105.    At all relevant times Topgolf USA knew that Hinojosa's conduct was in violation of applicable law.

- 21 -

106.     Topgolf USA Inc had a duty of reasonable care in enforcing the anti-sexual harassment and discrimination policies it promulgated to ensure that TopGolf LV maintained a safe working environment free of sexual harassment and assault.

107.     TopGolf USA knew that Hinojosa was unfit to work within the workplace and posed a risk to Plaintiffs and other coworkers. TopGolf Defendants breached their duty to Plaintiffs by failing to terminate Hinojosa.

108.     As a direct and proximate result of TopGolf USA's negligent retention of the high level human resources managers who were involved in the cover-up alleged herein, Plaintiffs suffered emotional distress, humiliation, anxiety, depression, and fear, all to their damage in an amount to be proven at trial.

## FIFTH CAUSE OF ACTION

### (ASSAULT AND BATTERY)

109.     Plaintiffs incorporate by reference each allegation contained in Paragraphs 1 through 108 as if fully set forth herein.

110.     On numerous occasions Hinojosa threatened to touch and touched various parts of Plaintiff's bodies without their permission or consent.

111.     In doing such acts Defendant Hinojosa intended to place Plaintiffs in apprehension of a harmful or offensive contact with Plaintiffs' bodies. Hinojosa did in fact touch, grope and commit sexual battery on Plaintiffs herein.

112.     As a result of Hinojosa's acts Plaintiffs were in fact placed in apprehension of an offensive contact by Hinojosa.

113.     As a further direct and proximate result Plaintiffs suffered emotional distress, humiliation, anxiety, depression, and fear all to their damage in an amount to be proven at trial.

114.    Defendants' actions were malicious, and oppressive, and done in conscious disregard for Plaintiffs and Plaintiffs are thereby entitled to punitive damages from Defendants.

## EIGHTH CAUSE OF ACTION

### (FRAUD/DECEIT AGAINST TOPGOLF DEFENDANTS)

115.    Plaintiffs Servin and Gomez incorporate by reference each allegation contained in paragraphs 1 through 113 as if fully set forth herein.

116.    TopGolf Defendants represented to Plaintiffs Servin and Gomez that they would promptly investigate their complaints, keep them abreast of said investigations, discipline Hinojosa appropriately, and protect them from continued harassment by Hinojosa.

117.    TopGolf Defendants also destroyed Plaintiff Servin's written statement detailing ongoing sexual harassment of Defendant Hinojosa, despite representing to plaintiff Servin that they would retain her statement and investigate her complaint. TopGolf's destruction of Serbin's written complaint amounted to a tacit representation that she did not report Hinojosa and that her allegations were untrue.

118.    In addition, TopGolf Defendants falsely represented to Plaintiff Gomez that he was being fired for stealing time because of a mistake he made on his timecard. Gomez has been and will be compelled to repeat this false representation to future employers.

119.    TopGolf Defendants intended that Plaintiffs Servin,  Gomez and others would rely on said representations and said persons did so rely on them

120.    TopGolf Defendants' intentional misrepresentations were substantial factors in causing damage and injury to Plaintiffs Servin and Gomez as alleged herein.

- 23 -

121.     TopGolf Defendants' intentional misrepresentations were malicious, oppressive, and made in conscious disregard for Plaintiffs Servin and Gomez's rights, and Plaintiffs Servin and Gomez are therefore entitled to punitive damages form Defendants and each of them.

**WHEREFORE,** Plaintiff respectfully requests that this Court enter judgment:

1.     Directing Defendants to pay compensatory damages to Plaintiff for:

(a)     Mental and emotional distress in a sum in excess of $15,000;

(b)     General and special damages in a sum in excess of $15,000;

(c)     Punitive damages in a sum in excess of $15,000;

(d)     Attorney's fees;

(e)     Costs of suit incurred herein;

(e)     Such other and further relief as this court deems just and proper.

DEMAND FOR A TRIAL BY JURY.

…

…

Dated this __ day of February, 2021.

/s/ James J. Lee
James J. Lee
NV Bar No. 1909
2620 Regatta Dr., Suite #102
Las Vegas, NV 89128
*Attorney for Plaintiff Ciara Williams*

- 24 -